Marion Savings Bank Co. et al. *v.* Harper.

(Decided February 10, 1930.)

*Messrs. Guthery, Strelitz & Guthery* and *Messrs. Donithen & Donithen,* for plaintiff in error Savings Bank Co.

*Messrs. Mouser, Young, Mouser & Wiant,* for plaintiff in error Waples.

*Mr. Paul M. Ashbaugh,* for defendant in error.

MIDDLETON, J. This is a proceeding in error to reverse a judgment against the plaintiffs in error, Marion Savings Bank Company and B. F. Waples, rendered in the common pleas court of Morrow county on the verdict of a jury. The record of the case is not only unusual, but we think justifies the observation that it is without a parallel or precedent.

It discloses that on November 5, 1923, the Marion Savings Bank Company, which hereinafter will be designated as the bank, filed its petition in the court of common pleas, in which it sought to foreclose a certain mortgage on real estate given by George W. Harper and his wife to secure the payment of $14,000, evidenced by a promissory note, and certain accrued interest. This petition recites, among other things, that on the 18th day of September, 1923, the said George W. Harper was duly adjudged a bankrupt in the United States District Court for the Northern District of Ohio, Eastern Division.

The petition further alleged that on the 29th day of October, 1923, the referee in bankruptcy for Morrow county in said district, duly ordered the trustee in said bankruptcy proceedings to renounce the administration of the property described in the petition as "assets of the bankrupt," and to relinquish all rights, claims, and interests of said bankrupt in

and to said property. The foregoing averments are referred to as giving the history of what had transpired prior to the filing of the petition.

The record further discloses that on December 8, 1923, leave was given to the defendants to answer in the foreclosure proceedings. No answer, however, was filed, and on January 2, 1924, the court made a finding in favor of the bank and rendered a judgment in its favor in the sum of approximately $15,000, and also granted a decree of foreclosure and order of sale. It appears further from the record that on January 5, 1924, leave again was given to George W. Harper to file an answer and cross-petition, and the same was filed on that date. Summons for the bank was issued on said cross-petition, which was served on January 12, 1924. This summons apparently did not disturb the bank or interfere in any way with its further proceedings on its judgment and decree of foreclosure, for on January 16th it caused an order of sale to issue, and such proceedings were had that on February 25, following, the real estate, which consisted of a farm of one hundred and fifty acres, was sold to the bank for the sum of $8,000, leaving a deficiency judgment in its favor of more than $7,000.

As we view the case, it is not necessary to give in detail its subsequent proceedings. What has been referred to shows that an order of sale was issued, the property sold, the receipts from the sale were distributed, during all of which said time the defendant, George W. Harper, had on file in the case, by leave of the court, a cross-petition demanding, among other things, a judgment for damages against the bank, in the sum of $6,000.

Resuming now the further progress of the case, we regard it unnecessary to say more than that after many changes in the pleadings, and various rulings, and judgment in the court, the record shows that on February 12, 1929, the case came on for trial to the court and jury. At this time the petition seems to have passed out of the record entirely. We find that Harper then had on file a second amended cross-petition. He charged that the real estate described in the petition, and which had then been sold under foreclosure, had been sold to him by the bank or its officials, particularly one B. F. Waples, who was the cashier of the bank, and whom he had then made a party defendant, and that in said transaction the bank and its agent, through false and fraudulent representations, had procured him to make the purchase. He further complained that the bank and its agent to induce him to make the purchase had agreed to loan him money to buy stock for said farm, and had failed and refused to make said loan, after he had purchased the farm.

To this cross-petition of Harper, the bank and Waples filed separate answers. The answer of the bank may first be considered as a general denial, and then it recited in detail the foreclosure and sale of the property, and that the bank held a deficiency judgment amounting to $7,903.52, and then it demanded that should the court find that any amount was due Harper from the bank, the deficiency judgment in such event might be offset against the same.

The defendant Waples, in his answer, made a general denial to the averments of the cross-petition, and also denied the jurisdiction of the court over his person in the case.

The jury returned a verdict in favor of Harper in the sum of $5,000, against both the bank and Waples. It appears from the record that the trial court, in its charge to the jury, first read to the jury the cross-petition of Harper and the answers of the bank and Waples, and thereafter wholly disregarded any further reference to the claim of the bank for a set-off, as pleaded in its answer. It appears that at the close of the charge, counsel for the bank made the following request: "If the Court please—we expressly ask the Court to charge as to the set-off claim of the bank, The Marion Savings Bank Company."

While it does not appear that the court then expressly refused to give any instruction as to the set-off claim of the bank, it does appear, as before stated, that no reference whatever was made by the court to that defense of the bank.

It follows that if the bank was entitled to a set-off against the claim of Harper, the action of the court in failing to give any instruction to the jury in respect thereto was erroneous and prejudicial to the rights of the bank.

On this particular branch of the case, counsel have not given the court any authorities which reflect materially on the question involved, and the court in its investigation of the question has been unable, as before observed, to find any precedent in any reported cases.

The trial court should have set aside the judgment in favor of the plaintiff when it gave leave to Harper to file an answer and cross-petition, and should have then proceeded on the issues made by the petition for foreclosure and the answer and cross-petition of the defendant. The failure of the

court to thus proceed with the case is, we think, responsible for the confusion that now exists. If the claim of Harper for damages had been adjusted at the time the trial court determined the rights of the plaintiff under his petition, the situation now presented would have been avoided.

It seems to have been the attitude of the trial court, and it appears to be the claim of Harper now, that because he had been adjudged a bankrupt, such pronouncement released him from any further liability to the bank, and that whatever judgment he might recover, could not, by reason of his bankruptcy, be affected in any way by the deficiency judgment of the bank.

The record shows that the court granted to Harper a judgment on his cross-petition for $5,000, free from any set-off of the plaintiff on his deficiency judgment. The effect of this judgment was to make it *res judicata* as to plaintiff's deficiency judgment. In fact, the effect of the jury's verdict was a finding by it that the plaintiff had no deficiency judgment. This is so for the reason that, while the trial court refused or failed to charge the jury on that issue, it nevertheless was an issue in the case, made so by the answer of the bank to Harper's cross-petition, and by reason of that situation was determined adversely to the bank's claim by the verdict of the jury.

It is the view of this court that when the referee in bankruptcy renounced the right to assert the claim for damages of Harper against the bank, for the reason, as then expressed, "that said real estate is encumbered for much more than its value and there is no equity therein for general credi-

tors," the rights of the parties were transferred to the state court, to be determined under the state law. It is impossible to believe that this renouncement and transfer had the effect to give Harper the benefit of the federal laws of bankruptcy, without imposing upon him any of its burdens, and it is further apparent, we think, that such action by the referee did not deprive the state court of its jurisdiction to determine the rights of the parties under the state law.

Admittedly, if Harper was not a bankrupt, the bank in the instant case had the right to set off its claim against the claim of Harper, and the trial court was empowered and had jurisdiction to determine the rights of the parties in harmony with the state law.

Another matter should be observed in this connection, and that is that Harper does not plead any release against this deficiency judgment by reason of his bankruptcy. The mere adjudication of bankruptcy in the federal court does not relieve Harper from liability, unless he demands it. He may waive this right, and by failing to demand it, in his reply to the answer of the bank to his cross-petition, he has waived it.

If these conclusions were not true, and the trial court in the instant case, under the state of pleadings and the evidence, was bound to adjudicate the matter in harmony with the law of bankruptcy, there is a provision in that law, which, we think, gives the bank the right to a set-off here. That provision is found in the Bankruptcy Act (Title 11, Section 108a, U. S. Code), which provides as follows: "In all cases of mutual debts or mutual credits be-

tween the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.''

It follows that if the controversy between the parties had proceeded under the Bankruptcy Act, the above section would control, and the bank, under its provisions, would have had a set-off against Harper for any deficiency arising from the sale of the mortgaged premises.

In *In re Orne*, 18 Fed. Cas., pages 821, 823, No. 10,581, there was a claim by the bankrupt that in a transaction with a creditor he had given the creditor a draft in payment of lumber which was not delivered to him, and that he was damaged by the creditor in not making such delivery. The bankrupt demanded credit for the draft and damages. Federal court, in passing upon the claim of the bankrupt for damages, said: ''In regard to the claim for damages * * * against the open account. * * * It is a wholly unliquidated claim, and its amount cannot now be arrived at. When it is put into the shape of a debt against Pope & Co., it may perhaps, then fall within the purview of Section 20 of the act.''

Section 20 of the Act (14 Stats. at L., 526) referred to by the court is now Section 68a (Title 11, Section 108(a), U. S. Code), hereinbefore referred to. It is apparent that either under the state law or the law of bankruptcy the bank clearly was entitled to set off its deficiency judgment against the recovery of Harper for damages.

It follows that the judgment below must be reversed by reason of the failure of the trial court, either through the jury, or by its own action, *sua*

*sponte,* to make an adjustment of the bank's deficiency judgment.

There are other errors in the record, which also require a reversal of the judgment, to which brief reference will be made. Before argument, Waples asked the trial court to give two special instructions to the jury, which request was refused. The court remarked that the substance of the instructions so requested would be given in the general charge. We regard the refusal to give special instruction No. 4 as particularly prejudicial to the rights of the defendant Waples. As before observed, the court refused to charge on the issue of a set-off as made by the pleadings. The court in its general charge also failed to instruct the jury as to the measure of damages in the event they found in favor of Harper. It seems, however, that no exception was taken to this failure, or objection made thereto, and we are not inclined to regard that error as being sufficient to justify a reversal of the judgment. There are other claims of error made in this proceeding, but they are not of such importance as to warrant an interference with the judgment.

We conclude that the court had jurisdiction of the parties and that exceptions in that regard are not well founded, but, for the reasons hereinbefore given, the judgment is reversed and the cause is remanded to the court of common pleas, for further proceedings according to law.

*Judgment reversed and cause remanded.*

LEMERT, P. J., and SHERICK, J., concur.

MIDDLETON, J., of the Fourth Appellate District, sitting in place of HOUCK, J., of the Fifth Appellate District.